The State v. Stone.

·THE STATE v. STONE, *Appellant.*

In Banc, December 4, 1893.

1. **Criminal Law:** INDIVIDUAL INSURERS: AGENT: LICENSE. One·
acting as agent of individuals in soliciting and procuring insurance
before such individuals have been licensed to do business in this·
state by the state superintendent of insurance, under Revised Stat-
utes, 1889, section 5910, is guilty of a misdemeanor, under section·
5916.

2. ——: ——: ——: ——. The fact that section 5910 provides.
that "no company" shall transact the business of insurance in this·
state without having received the proper authority to do so from the
state superintendent, does not relieve one of the prohibition and
penalty prescribed by section 5916.

3. **Insurance, State Regulation of.** A state has the full power
to prescribe the conditions on which an insurance business may be·
carried on within its limits by individuals, provided it does not dis-
criminate against citizens of equal standing and merit.

*Appeal from St. Louis Court of Criminal Correction.—*
:HON. J. R. CLAIBORNE, Judge.

AFFIRMED.

*M. W. Huff, Lee, McKeighan, Ellis & Priest* for
appellant.

(1) The office of insurance superintendent is one
created by statute, and he can grant a license only to
those whom the statute designates, and his license
issued to any other is a nullity. *McCreary v. Rhodes,*
63 Miss. 455; *People v. Davis,* 45 Barb. 494; *State v.*
*Hill,* 52 N. J. Law, 326; *Fort v. State,* 18 S. E. Rep.
(Ga.) 14. (2) "Association of individuals," as used
in our statute, is synonymous with corporations, or
applies to joint stock companies having a capital stock

divided into shares and governed by articles of association which describe their objects, and in which the members assume the liability of partners to the creditors of the company. Cook's Corporation Law, sec. 504; Missouri Constitution, art. 12, sec. 11; Revised Statutes, 1889, sec. 2480; Revised Statutes, 1889, secs. 5873, 5877. (3) The business of insurance is not a franchise. It belongs and has always belonged to the citizens exclusive of any state monopoly. 2 Wendell's Blackstone, p. 37; *State v. Scougal*, 51 N. W. Rep. 858; *Bank v. Earl*, 13 Pet. 595; *Briscoe v. Bank*, 11 Pet. 257; May on Insurance [3 Ed.], sec. 18; Angell on Insurance, sec. 7, p. 43; *Lord v. Dall*, 12 Mass. pp. 118, *115; *Law v. Goddard*, 12 Mass. 115; *Mitchell v. Cockburne*, 1 H. Black. 379; *Booth v. Hodgson*, 6 T. R. 405: *Harrison v. Miller*, 7 T. R. 340. (Note.) (4) The contract formed by a Lloyds is a personal contract; it has always been held to be an individual contract, and not one of partnership. Lindley on Partnership [Ed. 1881], *57; *Strong v. Harvey*, 3 Bing. 304; *Harrison v. Miller*, 7 T. R. 340. (Note.) *Mitchell v. Cockburne*, 2 H. Black. 379. (5) There is no law in this state authorizing the insurance superintendent to license an individual or several individuals, or an association of individuals to carry on an insurance business, and hence individuals are not required to take out a license. Defendant is not charged with representing an "association of individuals." Insurance statutes quoted in detail in argument. Bishop on Statutory Crimes, sec. 220; *State v. Slaughter*, 70 Mo. 484; *Nance v. Hemphill*, 1 Ala. 551; *Fort v. State*, 18 S. E. Rep. (Ga.) 14. (6) This being a criminal statute, it must be strictly construed, and must not be extended by interpretation to include anyone not within its letter. (7) The history of our legislation in regard to insurance shows that it was never the intention of the legislature to require an

individual to procure a license before engaging in this business. (8) The state of Missouri has no right to regulate the business of insurance as carried on by individuals. (9) A state has no right, under the guise of regulating a legitimate business, to impose such restrictions and conditions as to prohibit the business; but the regulations imposed must be reasonable and such as can be complied with, and a state never has the right to interfere with constitutional rights in passing laws in exercise of its police powers. Tiedeman on Limitation of Police Power, 1886, p. 273; Cooley on Constitutional Limitations, p. 746. (10) The requirement of the statute that all who engage in business of this kind shall first deposit $100,000, without regard to the amount of business done, is unreasonable and really amounts to a prohibition, and as such is in violation of article 2, sec. 4, Constitution of Missouri, and article 5 and 14 of the Amendments to the Constitution of the United States. (11) So are the provisions prohibiting a citizen from writing two kinds of insurance, and compelling him to cease writing insurance in case of his insolvency. (12) An attempt to prohibit an individual from doing an insurance business without a license, and prescribing a penalty for his so doing without first providing a means by which a license may be obtained, virtually prevents his engaging in this business, and is unconstitutional and void and is in conflict with, *first*, article 2, section 4, Constitution of Missouri: "That all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry;" *second*, article 2, section 30, Constitution of Missouri: "That no person shall be deprived of life, liberty or property without due process of law;" *third*, article 5, Amendments of Constitution of the United States, which is the same as the section just quoted; *fourth*, article 4, section 2 of the Constitu-

tion of the United States: "The citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states;" *fifth*, article 14, Constitution of the United States:    *    *    *    "Nor shall any state deprive any person of life, liberty or property without due process of law." *State v. Scougal*, 51 N. W. Rep. 858; Cooley on Torts, p. 227; *Bertholf v. O'Reilly*, 74 N. Y. 509; *In re Jacobs*, 98 N. Y. 98; *People v. Marx*, 99 N. Y. 337; *Slaughterhouse Cases*, 111 U. S. 146; *Millet v. People*, 117 Ill. 294; *State v. Loomis*, 115 Mo. 307; *Com. v. Perry*, 28 N. E. Rep. 1126; *Godcharles v. Wijeman*, 113 Pa. St. 431; *State v. Goodwin*, 33 W. Va. 179; *State v. Company*, 33 W. Va. 198.

*R. F. Walker*, Attorney General, for the state.

(1) The word "company" means those united for the same purpose in trade or business. *Palmer v. Pinkham*, 33 Me. 36. The simple word "company" includes individuals, as well as corporations. *Dock Co. v. Garrity*, 115 Ill. 164. The word is often used to designate associations, whether chartered or unchartered. By the word "association" is meant an organization of persons without a charter, for the transaction of business, the benefit of humanity, the promotion of culture or other purposes or an unincorporated society or board. The word may be applied to those who are already associated and named in whatever articles may have been adopted, or to those who may come in afterward. *Bank v. Boynston*, 11 Cush. 380. (2) Insurance companies are prohibited from doing business in this state without having first procured a certificate of authority from the superintendent of insurance. Revised Statutes, 1889, sec. 5910. Companies are required to procure annually for their agents such cer-

tificates of authority. (3) Agents are criminally responsible for doing business for an unauthorized company. Revised Statutes, 1889, sec. 5916; *State ex rel. v. Insurance Co.*, 81 Mo. 89; s. c., 10 Mo. App. 580; *State ex rel. v. Insurance Co.*, 9 Mo. App. 364. (4) Individuals, as well as corporations, are required to secure authority from the insurance department to transact business in this state before their agents are authorized to do business. Revised Statutes, 1889, secs. 5910, 5911. These acts were passed by the legislature in 1874, especially to include individuals within the provisions of the insurance law, and in accordance with the recommendation which had been made by the superintendent of insurance in his report to the governor in 1872. See Laws, Missouri, 1874, sections 3 and 5, page 81, which compare with sections 5910 and 5911, *supra;* the latter sections being substantially the same as the act of 1874, just cited. All insurance business in Missouri is subject to control of the state. *State ex rel. v. Benefit Ass'n*, 6 Mo. App. 163. (5) The acts for the incorporation and regulation of life insurance companies are general regulations for the protection and security of the citizen, and in no way violating the constitution, either state or federal. *Price v. Insurance Co.*, 3 Mo. App. 262. (6) Rules for the conduct of the most necessary and common occupations may be prescribed and enforced by a state when it is deemed that they afford opportunities for imposition or fraud. The business of insuring lives is in this category. Cooley's Constitutional Limitations [5 Ed.], p. 743, 2d par. and note 1, p. 744; *Lothrop v. Steadman*, 42 Conn. 583; *Ward v. Farwell*, 97 Ill. 593. (7) One hundred and fifty years ago the British Parliament enacted a law placing certain restrictions around those engaged in the insurance business, and since that date, both in England and in this country, the business has

been subjected to special·legislative provisions.    Marsh
·on Insurance, chap. 2, sec. 2, p. 45; *State ex rel. v.
Benefit Ass'n, supra.*  (8) Insurance companies, whether
composed of individuals or consisting of a company,
or existing as a corporation in one state and author-
ized to carry on business therein, have no natural right
to carry on business in any other state, and permission
·so to do can only be secured in accordance with the
laws of the latter state.    Tiedeman on Police Power,
p. 281, and cases cited under note 2.    *Paul v. Virginia,*
8 Wall. 168; *Ducat v. Chicago,* 10 Wall. 410; *Insurance
Co. v. Massachusetts,* 10 Wall. 566; *Leavenworth v.
Booth,* 15 Kan. 628; *State v. Phipps* (Kan.), Ins. Law
.Jour., vol. 22, N. s. vol. 2, p. 345, decisions rendered
January 7, 1893.    (9) Such laws are not in conflict
with the constitutional provision (Constitution of
United States, art. 4, sec. 2), which declares that "the
citizens of each state shall be entitled to all privileges
and immunities of citizens in the several· states."
*Paul v. Virginia, supra.*    Generally, a state may regu-
late the carrying on of any business within its limits.
*Higgins v. Rinker,* 47 Tex. 381.

BURGESS, J.—This is a suit begun upon an infor-
mation based upon an affidavit made on April 25, 1893,
by C. P. Ellerbe, the then superintendent of the
insurance department of the state of Missouri, in
which information the defendant is charged with the
violation of the second clause of section 5916, Revised
Statutes of 1889, by representing, as agent, certain
individuals, and writing for them a policy of insurance,
by the terms of which they agreed to idemnify one
Emmitt Thoroughman against accident before said
individuals had procured a license to do business in
Missouri.

The defendant was arrested upon a warrant; was

arraigned and pleaded not guilty, and upon the hearing of the evidence was fined $10 and costs. After a motion for a new trial was overruled, and also a motion in arrest, defendant brings the case here by appeal.

The evidence showed that the parties whom defendant represented in procuring this insurance were one hundred in number, residing in the State of New York, who were conducting insurance upon the manner of the ancient Lloyds; that they individually signed a power of attorney authorizing certain parties to write insurance for them individually, and that each policy written was, in case of loss, to be a charge against them individually, and not jointly, in a sum equal to one one-hundredth of the amount of the liability incurred.

By the terms of the agreement each individual agrees to deposit with an advisory committee the sum of $1,000, which is to be held for the individual account of such subscriber, and which is to be credited or debited in case of gain or loss as an individual account. The "insurance to be effected for and on behalf of each of the individual subscribers hereto" shall be in charge of certain parties "as attorneys in fact of each subscriber hereto." "The attorneys shall keep separate accounts for each of the subscribers to this agreement, and each subscriber shall at all times have access to his individual account;" an advisory committee is provided for, who shall cause to be made up, on the thirty-first of December, in each year, all the accounts of the several subscribers hereto. The several subscribers, in case the year's business was profitable, are then to receive such part of the profits credited to their individual accounts as the advisory committee shall determine, and are to receive a certificate for the balance. In case the accounts show that there has been a loss, then each subscriber is to make his individual account good.

Any subscriber may withdraw by giving thirty days' notice, and the advisory committee may, if it is deemed advisable, compel the attorneys to cease acting for any particular individual. In certain conditions a member may assign his individual holding and liability to any other individual, if approved by the advisory committee.

"Neither of the subscribers shall be made jointly liable with the others, or with either of the others, but each subscriber shall only be made severally and separately liable to the amount authorized by him individually in the power of attorney given by him to the attorneys above mentioned; nor shall any joint liability be created on behalf of the subscribers hereto, in any manner arising out of the business to be carried on under this agreement, but only a several liability on behalf of each individual subscriber. No policy, however, shall be issued on behalf of any individual subscriber hereto, unless each of the individual subscribers insures for a like amount on said policy."

There is no limit upon the liability of the several members. His whole property is liable for the payment of any liability incurred by him.

The contract also provides that each one of the insurers in consideration of the premises and of the execution of this agreement by the others, does hereby severally agree for himself individually to and with the others, and with each of them, that he and his representatives and assigns will faithfully abide by and carry out his obligations and covenants hereunder.

The policy written provides that "each of the subscribers hereto, as a separate underwriter, does for himself and not one for the other hereby insure (subject to the conditions herein) E. B. Thoroughman, etc." It further provides that in case of suit brought for loss under the policy it is to be begun against only

one of the underwriters at one time, a final decision to be decisive of such claim against each of the underwriters. Each of the present subscribers as a separate underwriter binds himself severally and not jointly with any other for the true performance of the premises for the amount expressed to be insured by him.''

Section 5916, Revised Statutes, 1889, under which defendant was prosecuted and convicted, reads as follows:

''Any person or persons who in this state shall act as agent or solicitor for any individual, association of individuals, or corporation engaged in the transaction of insurance business, without such person or persons first having obtained from the superintendent of the insurance department of this state the certificate authorizing him to act as such agent or solicitor, as required by section 5910 of the Revised Statutes of this state, or who shall act as agent or solicitor for any individual, association of individuals, or corporation engaged in insurance business before such individual, association of individuals, or corporation shall have been duly authorized and licensed by the superintendent of the insurance department of this state to transact business in this state, or after such license has been suspended, revoked, or has expired, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than $10, nor more than $100 for each offense, or imprisonment in the county or city jail for not less than ten days, nor more than six months, or by both such fine and imprisonment.''

The specific charge against defendant is that he did willfully and unlawfully act as agent and solicitor for certain individuals (whose names are set out) in inducing and procuring one Emmitt Thoroughman to enter into a contract of accident insurance with said individuals before said individuals were duly authorized or

licensed to do business of insurance.

It is conceded by counsel for defendant that he was an insurance agent, and that he was acting as such at the time charged in the information, as that term is used and defined by section 5916, Revised Statutes, *supra*.

It may be conceded, as is contended by counsel for defendant, that the office of insurance superintendent is one created by statute, and that he can only grant a. license to such persons as the statute designates, and license issued by him to any other would be null and void. *People v. Davis*, 45 Barb. 494; *Amerman v. Hill*, 52 N. J. Law, 326; *McGee v. Beall*, 63 Miss. 455. And that as a general thing "association of individuals," as used in our statute, is synonymous with corporations, or applies to joint stock companies having a capital stock divided into shares, and governed by articles of association which prescribe their objects, and in which the members assume the liability of partners to the creditors of the company, is also well settled law. Cook on Stock and Stockholders and Corporation Law, sec. 504. But the word "company" sometimes includes individuals as well as corporations *(Chicago Dock & Canal Co. v. Garrity*, 115 Ill. 155), depending on the sense in which it is used, and the intent of the law making power.

The use of the word "company" in section 5910, Revised Statutes, 1889, which provides that no company shall transact in this state any insurance business, unless it shall first procure from the superintendent of insurance department of this state a certificate stating that the requirements of the insurance laws of the state have been complied with, authorizing it to do business, we have no doubt was simply because the business of insurance in this state is almost all done by incorporated companies. It should be read in connection with the following section and as including both

companies and association of individuals. The letter of the section must yield to the evident intent of the legislature as deduced from the whole act in regard to insurance taken together, giving due consideration to the object of the act, and the fact that it is intended to regulate the entire system of insurance within the state. *Perry County v. Jefferson County*, 94 Ill. 214; *Railroad v. Trustees*, 43 Ill. 303.

Section 5793, Revised Statutes, 1889, provides that the insurance department shall be charged with the execution of all laws now in force, or which may be hereafter enacted, in relation to insurance and *insurance companies* doing business in this state. Section 5801 provides that it shall be the duty of the superintendent of the insurance department "to file in his office and safely keep all books and papers required by law to be filed therein, to issue certificates of authority to transact business in this state to any companies who have fully complied with the laws of this state in the organization of insurance companies, and the transaction of the business of insurance, etc. Section 5802, makes it his duty to furnish to every *insurance company* doing business in this state blanks on which to make its annual report; while section 5805 provides for an examination by the commissioner of any insurance company incorporated or doing business in this state, and section 5807 provides for the payment of certain fees to be paid by such insurance companies.

The whole of article 2, Revised Statutes, 1889, in regard to life and accident insurance uses the words company or corporation, and in no place does it make use of the word individual, and if taken by itself, it must be conceded that the various provisions therein contained relate to incorporated companies doing an insurance business in this state, and not to individuals or an unincorporated association of individuals. The

first section of article 5, of the same chapter, being section 5910 of the Revised Statutes of 1889, is an old section brought down from the Revised Statutes of 1879; and, standing alone, it also relates to, and contemplates, incorporated companies, and not individuals or an unincorporated association of individuals. But the next section, as amended and carried into the Revised Statutes of 1889, provides that "No individual or association of individuals, under any style or name, shall be permitted to do the business mentioned in this chapter within the state of Missouri, unless he or they shall first fully comply with all the provisions of the law of this state governing the law of insurance."

This section in express terms makes the provisions of article 2 applicable to an individual or an association of individuals doing an insurance business. The argument that section 5916, upon which this information is founded, should be disregarded, so far as it applies to a person or an unincorporated association of persons, because the law points out no method by which a person or such an association can procure a certificate to do business, is not well taken. The argument is based upon a false assumption; for, according to section 5911, an individual or such an association of individuals may, and indeed must, first comply with the laws governing the business of insurance, meaning, in case of life and accident insurance, the provisions of article 2. It is true that some of the provisions of that article can have no application to an individual doing insurance business, as, for instance, those relating to the organization of insurance corporations; and in other instances designated officers of the insurance corporation are required to do certain things. All these things can be done by the individual or the association of individuals proposing to do an insurance business. There is no difficulty whatever in this respect, and the individual

or association proposing to do an insurance business can make the required deposits and do the other things necessary to procure a certificate to do such business.

The evident intent of the legislature as shown by the sections of the statute quoted, was to regulate and systematize the business of insurance in this state, and that it was never its purpose to require strict observance of its statutory behests, by corporations and companies, doing business in this state, and to require nothing whatever of individuals engaged in the same business. On the contrary, it is manifest that the intent was to require of them the same compliance with the law that is required of corporations and companies, and if we are correct in this position, while conceding that the offense with which the defendant is charged is penal in its nature, and that in such case a strict construction of the statute is required as is held in *Com. v. Carroll*, 8 Mass. 490; *State v. Brady*, 9 Humph. 74; *Hamuel v. State*, 5 Mo. 260, and Bishop on Statutory Crimes, sec. 220; yet it is not proper or reasonable to construe it strictly for the mere purpose of defeating it when the intent is plain as in this case.

Whether the state has a right to say to an individual or a company of individuals, other than a corporation, that they, or it, cannot engage in two or more kinds of business is unnecessary to pass upon in this case, as there is no such question involved in this controversy, nor is the right of the citizen abridged, by requiring of him the same duties, and the compliance with the provisions of the statute that are required of a company, composed as they are of individuals, engaged in the same business.

If then we are correct in our position in construing the statute as including and meaning individuals, there is no apparent reason why defendant could not have obtained from, and why the insurance commissioner

could not have issued to, him a valid certificate under sections 5910 and 5911 of the statute, if defendant had shown to him that those whom he represents had complied with the law in regard to insurance companies doing business in this state.

A further contention on the part of defendant is, that the state has no right to regulate the business of insurance as conducted by individuals. That the state may impose conditions on corporations doing business in this state that it cannot impose on an individual, is well settled, because they are creatures of the law, and have no power or authority to transact any kind of business, save and except that authorized by their charters, and the statutes under which they are organized. Boone's Law of Corporations, sec. 33; *Ins. Co. v. Morse*, 20 Wall. 445; *Doyle v. Ins. Co.*, 94 U. S. 535; *Express Co. v. St. Joseph*, 66 Mo. 675; Tiedeman's Limitations of Police Power, p. 281. But while this is true, it is also true that the state has, by virtue of its sovereign power, the right to regulate all trades, callings and professions, but it cannot discriminate between citizens of equal standing and merit. There is no pretense that there is any discrimination in the case at bar between citizens of this or any other state. That the state also has the power to require corporations, companies and individuals who propose to engage in the insurance business to make deposit with the insurance commissioner, of a reasonable amount of money or securities to secure their policy holders against loss, seems but reasonable and just. We do not contend that it would have the right to exact a deposit of exorbitant or an unreasonable amount, the effect of which would be to prevent individuals as well as companies from engaging in such business. But the statute in this regard we think not unreasonable, and could have no such an effect.

As has been said, section 5911, expressly includes individuals and subjects them to the same provisions as companies and corporations.

Section 5916, under which defendant was convicted, prohibits any one from acting as agent or solicitor for any individual, association of individuals or corporation in the transaction of insurance business, without such person or persons having first obtained from the superintendent of the insurance department a certificate authorizing him to act as such agent or solicitor, or before such individual, association of individuals or corporation shall have been duly authorized and licensed by the superintendent of the insurance department to transact business in this state. A violation of this section by the agent or solicitor subjects the offender, upon conviction, to a fine, imprisonment in the county jail, or both.

In a recent opinion delivered by the supreme court of Kansas (*State v. Phipps*, 22 Ins. Law Jour. 351), the court says: "At this writing it is probable that every state in the Union has passed laws upon this subject, until it may be said that the right of state regulation of the business of insurance is universally recognized and upheld. * * * The state has power to regulate and control—and to provide penalties for the transgression of its regulating and controlling statutes. * * * If the theory of the counsel for the appellants ever ripens into authoritative judicial decision, the power of the state to regulate and control the business of insurance within its limits is gone."

In *Paul v. Virginia*, 8 Wall. 168, the statute of Virginia required every insurance company not incorporated by that state should, as a condition of carrying on its business there, deposit securities with the state treasurer and obtain a license; and another statute made it a criminal offense for a person to act in Vir-

ginia as agent for an insurance company not incorporated by Virginia, without such license. Paul, the defendant, acted as agent without a license, and was convicted and fined. The case, therefore, arose out of an attempt on the part of Virginia to enforce its penal laws for the regulation of the business of insurance within its borders. The court held that such a statute violated no provision of the constitution of the United States, and affirmed the judgment of conviction. To a like effect are *Ducat v. Chicago*, 10 Wall. 410; *Ins. Co. v. Massachusetts*, 10 Wall. 566.

To allow the defendant to carry on the business of an insurance agent under the circumstances as developed in this case, without complying with the law in regard to insurance, would be simply licensing him and those whom he represents to evade the law, while companies and corporations engaged in the same business have complied therewith. If he and those whom he represents desire to engage in such business, they should comply with the law, and while deriving benefits from such business, bear the burdens imposed upon it by statute.

The judgment is affirmed. All concur, except BARCLAY, J., absent.