Peninsular Industrial Insurance Company, *Plaintiff in Error*, v. The State of Florida, *Defendant in Error*.

1. While a statute may be declared inoperative because it is clearly unconstitutional or is so indefinite and uncertain as to be incapable of just and certain enforcement, yet if the law can fairly be so construed as to make it lawfully enforcible the courts should in deference to the lawmaking power give it that effect rather than to adjudge a legislative enactment to be illegal or vain.

2. Legislative enactments upon the same subject should be considered as an entirety in ascertaining the real legislative intent and purpose.

3. The language used in a statute should be construed as an entirety and with reference to the purpose of the law as shown by all enactments on the subject; and the meaning of words is ascertained by the connection in which they are used and the evident intent disclosed by all the provisions on the same subject.

4. Particular words or provisions should be construed with reference to the general purpose designed to be accomplished.

5. A construction should if practicable be adopted that would make an act constitutional and effective rather than one that

would render it of doubtful validity or uncertain and incapable of definite and effective enforcement.

6. It must be assumed that the legislature intended a valid and effective enactment; and the construction of an act should be such as to make it valid and effective if its language does not exclude such a result.

7. In designating classes engaged in a particular business or affected by a statutory regulation or requirement, it is not necessary to enumerate all the classes every time they are referred to, if the provisions as an entirety show an intent to include all classes engaged in the business or designed to be affected by the regulations or requirement.

8. While an arbitrary and unjust classification of those affected by a legislative regulation may render the regulation inoperative when it in effect denies to some persons the equal protection of the laws, yet the regulation will not be nullified by the courts unless it is clear that the exercise of the State authority has been arbitrarily abused in making unjust discriminations that in effect deny substantial rights secured by the organic law of the land.

9. The provision of section 8 of Chapter 5597, Acts of 1907, imposing a tax of two per cent of the gross receipts of premiums from policy holders by companies or associations engaged in the business of sick and funeral benefit insurance in this State is not void for uncertainty, and does not by unjust discrimination deny the equal protection of the laws.

This case was decided by Division A.

Writ of error to the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*Fletcher & Dodge,* for Plaintiff in Error;

*Park Trammell,* Attorney General, for the State.

WHITFIELD, C. J.—The State recovered judgment against the Insurance Company for premium taxes and the company took writ of error.

In view of the points decided at this term in the case of Afro. American I. & B. Ass'n v. State, the only contentions urged here are that the statute imposing the tax upon sick and funeral benefit insurance companies doing business in the State which the plaintiff in error is one, is void for uncertainty in that it does not state when the tax shall be paid, and that the statute unjustly discriminates in not applying to individuals who may be authorized to do such insurance business.

While a statute may be declared inoperative because it is clearly unconstitutional or is so indefinite and uncertain as to be incapable of just and certain enforcement, yet if the law can fairly be so construed as to make it lawfully enforcable the courts should in deference to the lawmaking power give it that effect rather than to adjudge an illegal or vain legislative action by declaring the act invalid or inoperative. Legislative enactments upon the same subject should be considered as an entirety in ascertaining the real legislative intent and purpose.

The language used in a statute should be construed as an entirety and with reference to the purpose of the law as shown by all enactments on the subject; and the meaning of words is ascertained by the connection in which they are used and the evident intent disclosed by all the provisions on the same subject. Particular words or provisions should be construed with reference to the general purpose designed to be accomplished. A construction should if practicable be adopted that would make the act constitutional and effective rather than one that would render it of doubtful validity or uncertain and incapable of definite and effective enforcement. It must be assumed

that the legislature intended a valid and effective enact-
ment; and the construction of an act should be such as to
make it valid and effective if its language does not exclude
such a result.   In designating classes engaged in a par-
ticular business or affected by a statutory regulation or
requirement, it is not necessary to enumerate all the
classes every time they are referred to, if the provisions
as an entirety show an intent to include all classes en-
gaged in the business or designed to be affected by the
regulation or requirement.  See Curry v. Lehman, 55 Fla.,
847, 47 South. Rep., 18; 26 Am. & Eng. Ency. Law (2nd.
Ed.), 656; 36 Cyc., 969; 1 Lewis' Suth. Stat. Const., sec-
tion 86.

While an arbitrary and unjust classification of those
affected by a legislative regulation may render the regu-
lation inoperative when it in effect denies to some per-
sons the equal protection of the laws, yet the regulation
will not be nullified by the courts unless it is clear that
the exercise of the State authority has been arbitrarily
abused in making unjust discriminations that in effect
deny substantial rights secured by the organic law of the
land.  See Mobile, Jackson, & K. C. R. R. Co. v. Turnip-
seed, 219 U. S., 35, 31 Sup. Ct. Rep., 136.

Section 2 of chapter 5459 Acts of 1905, provides that
"any individual or company, corporation or association
organized under the laws of this or any other State or
country may transact the business of sick and funeral
benefit insurance for the purpose of caring for the sick or
the burial of the dead, or both, in this State upon compli-
ance with the provisions of this act."  In section 5 of the
act it is provided that "in addition to the foregoing
requirements   *   *   *   all such companies, corporations,
or associations, whether incorporated or organized under
the laws of this or any other State or country, shall

\*   \*   \*   annually on the first of each year, furnish the
State Treasurer with a statement under oath   \*   \*   \*
the amount of the gross receipts of such company, corpo-
ration or association in the State of Florida during the
preceding year." A similar provision is by sections 2758
and 2760 of the General Statutes made applicable to all
individuals, firms, associations and companies doing an
insurance business in the State. In section 8 of chapter
5597, page 49, 50, Acts of 1907, it is provided: "That
each insurance company, or association, firm or indi-
vidual doing business in this State, including corpora-
tions or associations engaged in the business of insuring
against fire, indemnity, accidents to the persons, acting as
surety upon bonds, guaranteeing the fidelity of employees,
and insuring employers against liability for accident to
employees, and life insurance companies shall pay to the
State Treasurer a license tax of two hundred dollars;
plate glass insurance companies shall pay to the State
Treasurer a license tax of fifty dollars; and in addition
thereto each of said companies shall, upon the 1st day of
January after the passage of this act, and on the first day
of each succeeding January thereafter pay to the State
Treasurer two per cent of the gross amount of receipts
of premiums from policyholders in this State.

Companies or associations doing business under Chap-
ter 5459, Laws of Florida, Acts of 1905, shall pay to the
State Treasurer two per cent of the gross amount of re-
ceipts from policyholders in this State."

From these statutory provisions it is clear that the
obligation to pay the two per cent tax upon gross receipts
is placed upon "each insurance company, or association,
firm or individual doing business in this State, *including*"
some that are specially enumerated; but such enumera-
tion manifestly is not complete for the less extensive word

"including" is used merely as illustrative and not exclusive. The last sentence above quoted was added so as to clearly indicate that the provision in section 7 of Chapter 5459, Acts of 1905, requiring sick and funeral benefit insurance companies or associations to pay a license tax of $100.00 but not requiring a percentage of their gross receipts to be paid, was not to operate so as to exempt those doing a sick and funeral benefit insurance business from the payment of the tax of two per cent on gross receipts. The previous paragraph required "*each* insurance company, or association, firm or individual doing business in this State" to pay a license tax of $200.00 except that plate glass insurance companies are to pay a license tax of $50.00, "and in addition thereto each *of said companies* shall, upon the 1st day of January * * * pay to the State Treasurer two per cent of the gross amount of receipts of premiums from policyholders in this State." This obviously means that the two per cent tax on gross receipts, from premiums required of all companies or associations engaged in insurance business in the State shall be paid on January first of each year. Even if individuals as such can be so "organized" and qualified under the requirements of the statute as to be duly authorized to engage in insurance business of any kind in this State, the terms "companies or associations" as used in the revenue law requiring two per cent of gross premium receipts to be paid as a tax, apply to all who are authorized under the statute, to do an insurance business in this State, whether as chartered corporations, or other associations or as individuals. See State v. Stone, 118 Mo., 388, 24 S. W. Rep., 164, 25 L. R. A., 243. This construction relieves the statute of uncertainty and ambiguity and makes it capable of enforcement to effectuate the obvious legislative purpose. And as thus construed the statute

is not subject to the criticism that it unjustly and arbitrarily discriminates between companies and individuals even if the State may not in imposing tax burdens justly discriminate between individuals and associations of persons and corporations.    See The Singer Manufacturing Co. v. Wright, 97 Ga., 114, 25 S. E. Rep., 249.

In determining whether a classification for purposes of legislative regulation is in effect a denial of the equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution the following rules have been adopted by the Supreme Court of the United States :

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary.    2.    A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality.     3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.    4.   One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.    *Bactel* v. *Wilson,* 204 U. S., 36, 41; *Louisville & Nashville R. R. Co. v. Melton,* 218 U. S., 36; *Ozan Lumber Co.* v. *Union County Bank,* 207 U. S., 251, 256; *Munn v. Illinois,* 94 U. S., 113, 132; *Henderson Bridge Co.* v. *Henderson* City, 173 U. S., 592, 615." Lindsley v. Natural Carbonic Gas Company, William S. Jackson. Attorney

General of the State of New York, et al., U. S.    , 31 Sup. Ct. Rep., 337, decided March 13, 1911. See also Taylor v. Prairie Pebble Phos. Co., decided here this term, and cases there cited. This case is unlike that of Seaboard Air Line R. Co. v. Simon, 56 Fla., 545, 47 South. Rep., 1001.

The statutes requiring insurance companies or associations to pay a tax of two per cent of their gross premium receipts is applicable alike to individuals or associations of persons or corporations, and consequently are not discriminatory.

The judgment is affirmed.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.