214 So.2d 874 (1968)
GREATER MIAMI FINANCIAL CORPORATION, a Florida Corporation, Doing Business under the Fictitious Name of Greater Miami Savings Center, Appellant,
v.
Fred O. DICKINSON, Jr., Comptroller ex Officio As Commissioner of Banking and As Commissioner of Building and Loan Associations, Appellee.
No. 36534.
Supreme Court of Florida.
September 11, 1968.
Rehearing Denied November 11, 1968.
*875 Walter A. Apfelbaum and Herbert M. Klein, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Larry Levy, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
By direct appeal we review a decree of a circuit court which passes directly on the validity of certain state statutes.
We consider the validity, and if valid the applicability, of Fla. Stat. § 665.02(1) (1959), F.S.A., and Fla. Stat. § 659.52(1) (1959), F.S.A.
The appellant, Greater Miami Financial Corporation, is a savings account broker. Its business is to assist customers in relocating money into out-of-state, safe, high-interest-yielding savings and loan associations. The record reveals that historically savings and loan associations on the West Coast of the United States have paid higher dividends on savings accounts than have similar institutions located in the East and South. The appellant savings account broker assists people in placing funds with these out-of-state institutions which are always federally insured. The broker does not open any accounts. It does not pay out any funds when customers desire to make withdrawals. Unlike a bank, it never reduces to possession the funds of its customers. Its primary function is to put the customer in touch with the institution that pays a higher rate of interest. Actually, the broker is a conduit for the transfer of money from a customer to a recommended non-resident association. The broker apparently receives a commission from the "forwardee". It is registered with the United States Securities and Exchange *876 Commission. It is subject to unannounced audits by that agency and is required to file with it an annual financial statement. It is also registered with the Florida Securities Commission.
The appellant does not establish a debtor-creditor relationship with its customers. Unlike a bank, it does not accept deposits for which it has any responsibility of redemption. It does not pay interest, issue or honor checks drawn upon it, issue savings account passbooks, lend money, charge interest, or issue monthly statements or any other evidence of indebtedness by or to its customers. Similarly, the appellant's operation has none of the characteristics of a savings and loan association. As stated above, it operates much after the fashion of a stock broker, except that it deals in savings accounts instead of stocks and bonds.
In 1953 the predecessor of appellant started business as a partnership. From 1954 to 1959 the current president of appellant corporation operated as a sole proprietorship. Greater Miami Financial Corporation was formed in 1959. It then took over the business and has since continued to operate under the registered fictitious name of "Greater Miami Savings Center". Appellant points to the fact that it has operated the business since 1953, but its operation was not questioned until the corporate entity assumed control in 1959.
This suit was instituted by Hon. Ray E. Green, the then Comptroller, in March, 1961. It was finally brought to a conclusion by his successor, Hon. Fred O. Dickinson, Jr. By the complaint, the Comptroller sought an injunction against appellant's operation because of alleged violations of two statutes. These are:
(a) Fla. Stat. § 665.02(1) (1959) which provides in part:
"Unless organized under the provisions of the law relating to building and loan associations, no corporation hereafter organized shall be entitled to use, as a part of its title or name; the word `savings'; * * *."
(b) Fla. Stat. § 659.52(1) (1959) which provides in part:
"(1) No person other than banks shall:
(a) Solicit or receive deposits, issue certificates of deposit * * *
(b) Advertise that it is accepting deposits and issuing notes or certificates therefor * * *."
We shall refer to the former as the Name Statute and to the latter as the Banking Statute. The Chancellor held that the use of the word "Savings" in the fictitious name used by appellant violated the Name Statute. He further held that appellant's operation did not violate the Banking Statute. He expressly upheld the constitutionality of the former. Hence, appellant brings his appeal directly here seeking reversal of the injunction against use of the word "Savings". Appellee, Comptroller, cross-assigns error asking reversal of that portion of the decree which permits appellant to continue operating under a proper name.
Appellant insists that since the word "Savings" appears only in its fictitious name and not in its corporate name, the statute does not apply. However, we have the view that as employed in § 665.02(1) (1959), supra, the expression "title or name" means the identifying description by which the business becomes known to the public. This could include either the official corporate title or the fictitious name under which the corporation elects to identify itself in the public mind. It could include both names. The purpose of the statute is to protect the public against a false indication of the character of the business by the use of certain words in the title or name employed by the enterprise. This aspect of the matter is also *877 pertinent to appellant's assault on the constitutionality of the statute.
It is contended that since the prohibitions of the Name Statute relate only to corporations, they do not apply similarly to individuals and, hence, do violence to constitutional mandates of equal protection. U.S. Const. Amend. XIV; Fla. Const.Decl. of Rights, § 1, F.S.A.
The organic law does not prohibit reasonable classifications of subjects of legislation as long as there is no discrimination within the class. A classification will be sustained if there is a reasonable relationship between the class affected, and the subject matter of the legislation. Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 So. 398 (1911); Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759 (1913); Florida Power Corp. v. Pinellas Utility Board, 40 So.2d 350 (Fla. 1949).
We sense no imbalance in the regulation of the corporate use of the name without a similar rule applicable to individuals. The use of the word "Savings" in a name has come to characterize banking institutions in the public mind. Fla. Stat. Ch. 665 (1959), F.S.A., governs the organization and regulation of building and loan associations. Under Fla. Stat. § 665.02 (1959), F.S.A., not less than nine nor more than twenty-one persons "shall make, sign and acknowledge * * * articles of incorporation" to organize such an association. The corporate entity is the machinery by which such groups deal with the public. Because the use of the word "savings" in the title suggests to the public a particular type of regulated financial institution, the Legislature has simply prohibited the use of the word in the name of other types of corporate entities. Furthermore, in dealing with the public, an individual would not enjoy the protective veil of the corporate structure. The Legislature apparently intended to make certain that the public doing business with corporations would not be misled.
By cross-assignment, the appellee urges that the Banking Statute prohibits appellant's savings account brokerage business. He contends that the Chancellor committed error in holding otherwise. It provides in effect that no person other than banks shall solicit or receive deposits or perform any of a large number of other functions of banks, including advertising that it is accepting deposits. § 659.52(1) (1959), supra. Appellee asserts that appellant violates the statute by accepting deposits. Appellant replies that the statute simply prohibits one not a bank from soliciting or receiving deposits of funds for itself. It does not prohibit the solicitation of deposits for someone else.
We agree with appellant. This statute is obviously designed to prevent non-banking institutions from exercising the powers or performing the functions of banks. The context in which prohibition of deposit solicitation is placed clearly suggests that it relates to one of several aspects of the banking business. The prohibition of the conduct of other aspects of the banking business, all included in the same sentence with that relating to deposits, rather definitely reveals a legislative intent to deal with deposits in the orthodox banking connotation as the placing of money in the hands of a financial institution for safekeeping with a resultant creation of a debtor-creditor relationship. We reach this result by simple application of the maxim Noscitur a sociis. State el rel. Wedgworth Farms, Inc. v. Thompson, 101 So.2d 381 (Fla. 1958).
Additionally, the placing of money with appellant by its customers is not a deposit within the contemplation of the Banking Code, of which Chapter 659 is a part. In the sense used in the Code a deposit creates evidence of an obligation to pay money to the depositor by the depository. The money so deposited is withdrawable by the former from the latter in accordance with the terms of the contract of deposit. These elements are totally *878 lacking in the relationship between appellant broker and its customers. When a customer delivers money or a check to the broker for forwarding to the non-resident savings and loan association no debtor-creditor relationship is established. The money is not withdrawable from the broker under any circumstances. The broker acts merely as the transient custodian of the funds for the sole and only purpose of sending them on to the intended out-of-state depository. Hence, the Chancellor ruled correctly when he held that appellant's business was not prohibited by the subject statute.
The decree is affirmed.
CALDWELL, C.J., and THOMAS, ROBERTS, DREW, ERVIN and ADAMS, (Retired), JJ., concur.