OVERTON, Justice.
This is a petition to review State, Department of Banking and Finance ex rel. Lewis v. Standard Federal Savings and Loan Association, 463 So.2d 297 (Fla. 1st DCA 1984), in which the First District Court of Appeal held that this state’s Department of Banking and Finance could not enforce against appellees sections 658.74 and 665.1001(2), Florida Statutes (1983), which relate to branch banking, on the ground that the federal government has preempted state regulation of federal savings and loan associations. The issue is whether Florida K-Mart stores may market certificates of deposit and money market certificates for a Michigan federal savings and loan association in return for a finder’s fee. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We approve the district court’s decision and, in accordance with prior decisions of this Court, hold that the state is preempted from prohibiting the type of savings certificate marketing at issue in this case.
A detailed statement of the unrafuted facts is contained in the district court’s opinion. In summary, in December 1983, Standard Federal, a federally chartered savings and loan association located in Michigan, entered into an agreement with K-Mart Corporation and its subsidiary, K-Mart Insurance Services, Inc., which pro *51 vided for K-Mart Insurance Services to market Standard Federal’s certificates of deposit and money market certificates on the premises of certain Florida K-Mart stores in return for a finder’s fee. The agreement limited K-Mart’s functions to acquainting potential depositors with the type of accounts available from Standard Federal; assisting persons interested in opening accounts in completing applications, signature cards, and proxy cards supplied by Standard Federal; and forwarding the initial deposit in the form of a check or money order payable to Standard Federal. After a certificate of deposit was issued, Standard Federal and the depositor would communicate directly, rather than through K-Mart. K-Mart would not pay withdrawals, nor would it accept additional deposits. The record reflects that this plan received the approval of the Federal Home Loan Bank Board, which advised Standard Federal that the plan “would not be in violation of board regulations on branching.”
The Department of Banking sought an injunction against Standard Federal and K-Mart on the ground that their participation in this plan constituted an unauthorized branch-banking operation, in violation of sections 658.74 and 665.1001(2), Florida Statutes (1983). The applicable portion of section 658.74 reads as follows:
(1)(a) No person other than a state bank or a national bank having its principal place of business in this state shall, in this state, engage in the business of soliciting or receiving funds for deposit or of issuing certificates of deposit or of paying checks....
Section 665.1001(2) provides in part:
(2) DOING BUSINESS. — No foreign association shall do any business of a savings association or savings bank within this state or maintain an office in this state for the purpose of doing such business, including, but not limited to, the establishment of a branch office.
The Department of Banking initially contends that the Federal Home Loan Bank Board’s broad powers regarding interstate banking have been substantially curtailed by the Garn-St. Germain Depository Institutions Act of 1982, Pub.L.No. 97-320, 96 Stat. 1469. After reviewing the amendments contained in the Act, together with the proposed rules implementing those amendments and the commentary of the Federal Home Loan Bank Board supporting those rules, the district court rejected this argument and concluded the Act contained no evidence of “congressional intent to defer to state law for the regulation of interstate branch operations of federal associations.” 463 So.2d at 303. In so holding, the district court recognized that the commentary stated that the Federal Home Loan Bank Board has exclusive jurisdiction to regulate interstate branch banking.
We agree with the district court’s opinion, and reaffirm our decision in Washington Federal Savings and Loan Association v. Balaban, 281 So.2d 15 (Fla.1973). In that case, the circuit court enjoined Washington Federal from seeking the Federal Home Loan Bank Board’s permission to establish a branch office. This Court granted a writ of prohibition, holding that the circuit court was without jurisdiction to interfere with the hearing called by and for a federal agency regulated by federal law. We concluded that
the Federal Government has pre-empted the regulation and supervision of federal savings and loan associations and the organization, incorporation, examination and operation of the same and location of offices and branch offices of federal savings and loan associations.
Id. at 17.
In its second point, the Department of Banking contends that the 1980 amendment to section 658.74(l)(a) (formerly 659.-52(l)(a)), which changes the phrase “[n]o person other than banks shall ... [sjolicit or receive deposits” to “[n]o person other than a state or a national bank, having its principal place of business in the state shall, in this state, engage in the business of soliciting or receiving funds for deposit,” requires us to recede from our decision in Greater Miami Financial Corp. v. Dickinson, 214 So.2d 874 (Fla.1968), which, the *52 Department concedes, involved a plan “almost identical” to the plan challenged in the instant case. In Greater Miami, the state comptroller sought to enjoin a Florida savings account broker from assisting customers in placing funds with out-of-state savings ánd loan associations. The broker, Greater Miami, did not open any accounts, did not pay out any funds when customers wanted to make withdrawals, and never reduced to its possession the funds of its customers. The comptroller sought the injunction against Greater Miami’s operation because it was not organized under Florida statutes relating to savings and loan associations, and because it violated section 659.-52(1), Florida Statutes (1959), which provided that “no person other than banks shall ... solicit or receive deposits, issue certificates of deposit....” We construed that statute as “simply prohibiting] one not a bank from soliciting or receiving deposits of funds for itself. It does not prohibit the solicitation of deposits for someone else.” Id. at 877 (emphasis added). We further stated:
The prohibition of the conduct of other aspects of the banking business, all included in the same sentence with that relating to deposits, rather definitely reveals a legislative intent to deal with deposits in the orthodox banking connotation as the placing of money in the hands of a financial institution for safekeeping with a resultant creation of a debtor-creditor relationship.
Id. We concluded that Greater Miami’s brokerage business was not prohibited by the laws of this state and affirmed the denial of injunctive relief.
We agree with the district court that the challenged actions of K-Mart do not constitute a violation of section 658.74 and find, in accordance with our decision in Greater Miami, that the absence of a debtor-creditor relationship is fatal to the Department’s claim that the brokering of savings accounts to out-of-state financial institutions constitutes the business of banking. The legislation restricting branch banking is not, in our view, intended to apply to these circumstances.
For the reasons expressed, we approve the decision of the district court of appeal.
It is so ordered.
BOYD, C.J., and ADKINS, McDONALD, EHRLICH and SHAW, JJ., concur.