STATE of Iowa, ex rel., Thomas H. HUSTON, Superintendent of Banking; Iowa Department of Banking; John Pringle, Supervisor of Savings and Loan Associations Office of The Auditor of State of Iowa, Plaintiffs,

v.

SHEARSON/AMERICAN EXPRESS, INC., A Delaware Corporation; Boston Safe Deposit & Trust Company, A Massachusetts Bank; Dean, Witter, Reynolds, Inc., A Delaware Corporation; Great Western Savings & Loan Assn., A California Association; City Federal Savings & Loan Assn., A New Jersey Federal Association; World Savings & Loan Assn., A California Association; Merrill, Lynch, Pierce, Fenner & Smith, Inc., A Delaware Corporation; California Federal Savings & Loan Assn., A California Federal Association; Coast Federal Savings & Loan Assn., A California Federal Association; Glendale Federal Savings & Loan Assn., A California Federal Association; Home Federal Savings & Loan Assn., A California Federal Association; Guarantee Savings & Loan Assn., A California Federal Association; Imperial Savings & Loan Assn., A California Federal Association; A.G. Edwards & Sons, Inc., A Delaware Corporation; First National Bank of St. Louis, A Missouri National Bank; Paine, Webber, Jackson & Curtis, Inc., A Delaware Corporation; Provident National Bank, A Pennsylvania National Bank; Stifel, Nicholaus & Co., Inc., A Missouri Corporation; Mercantile Trust Co., N.A., A Missouri Bank; Norwest Bank of Minneapolis, N.A., A Minnesota National Bank; Bank One of Columbus, N.A., An Ohio National Bank; Buckeye Federal Savings & Loan Assn., An Ohio Association; and Pacific First Federal Savings Bank, A Federally Chartered Mutual Savings Bank, Defendants-Movants,

Iowa Independent Bankers Assn., Iowa Bankers Assn., and Independent Bankers Assn. of America, Intervenors.

No. 85–1825.

Supreme Court of Iowa.

June 17, 1987.

Thomas J. Miller, Atty. Gen. and Donald G. Senneff and William O. Hagen, Asst. Attys. Gen., for plaintiffs.

John D. Hudson of Carney, Hudson & Williams, Des Moines, and Robert J. Kheel, Patricia S. Skigen, Michael R. Young, and Susan E. Amron of Wilkie, Farr & Gallagher, New York City, for defendants Shearson/American Exp., Inc. and Boston Safe Deposit and Trust Co.

Denny M. Dennis of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, and Steven J. Kolleeny, Janice M. Lee, Francis B. Marjorie, and Douglas M. Kraus of Skadden, Arps, Slate, Meagher & Flom, New York City for defendants Merrill, Lynch, Pierce, Fenner & Smith, Inc. and California Federal Sav. and Loan Ass'n.

John D. Hudson of Carney, Hudson & Williams, Des Moines, for defendant Dean, Witter, Reynolds, Inc.

Gerald H. Grask, Des Moines, and McKenna, Connor & Cuneo, Los Angeles, Cal., for defendants Great Western Sav. and Loan Ass'n, City Federal Sav. and Loan Ass'n, and World Sav. and Loan Ass'n.

Gerald H. Grask, Des Moines, and G. Howard Fraser, Los Angeles, Cal., for defendants Coast Fed. Sav. and Loan Ass'n, Glendale Federal Sav. and Loan Ass'n, Home Federal Sav. and Loan Ass'n, Guarantee Sav. and Loan Ass'n, and Imperial Sav. and Loan Ass'n.

A. Roger Witke and Timothy J. Walker of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, Joanne D. Martin of Pepper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., and Arthur L. Smith, Washington, D.C., for defendant A.G. Edwards & Sons, Inc.

Paul A. Zoss and William A. Eddy of Adams, Howe & Zoss, Des Moines, for defendant Paine, Webber, Jackson & Curtis, Inc.

Roy M. Irish of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, and Thomas E. Douglas of Coburn, Croft & Putzell, St. Louis, Mo., for defendant Stifel, Nicholaus & Co., Inc.

F.L. Burnett II of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for defendant First Nat. Bank of St. Louis.

F.L. Burnett II of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, and Matthew M. Strickler, Phila-

delphia, Pa., for defendant Provident Nat. Bank.

F.L. Burnett II of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, and Robert H. Brownlee, St. Louis, Mo., for defendant Mercantile Trust Co., N.A.

Thomas D. Hanson of Hanson, Bjork & Russell, Des Moines, and Duane W. Krohnke, Minneapolis, Minn., for defendants Norwest Bank of Minneapolis, N.A. and Bank One of Columbus, N.A.

John V. Donnelly of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for defendant Buckeye Federal Sav. and Loan Ass'n.

John C. Cortesio, Jr., of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for defendant Pacific First Federal Sav. Bank.

John Gamble, Anthony Longnecker, and Brent B. Green of Gamble, Riepe, Webster, Davis & Green, Des Moines, and Richard W. Berglund, Des Moines, for intervenors Iowa Independent Bankers Ass'n, Iowa Bankers Ass'n, and Independent Bankers Ass'n of America.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER and LAVORATO, JJ.

HARRIS, Justice.

Four questions have been certified from the federal court which inquire into whether a widespread brokerage practice is proscribed because the brokers are not licensed as bankers in Iowa:

When a brokerage doing business in Iowa receives money from an Iowa depositor for deposit in a state or national bank:

(1) Is the brokerage, if acting in the capacity of agent for the bank, in violation of Iowa Code section 524.107(1)?

(2) Is the brokerage, if acting in the capacity of agent for the Iowa depositor, in violation of Iowa Code section 524.107(1)?

(3) Is the bank, if it accepts said deposits pursuant to an agency relationship with the brokerage, in violation of Iowa Code section 524.107(1)?

(4) Is the bank, if it accepts said deposits while acting as agent for an Iowa depositor, in violation of Iowa Code section 524.107(1)?

At issue are the receipt and transmittal of funds used to purchase certificates of deposit. Because we do not believe the legislature intended to vest Iowa banks with exclusive dominion over these purchases, we answer the four questions in the negative.

With the passage of the Economic Recovery Tax Act of 1981 congress authorized the issuance of certificates of deposit known as "all-savers certificates." As an incentive to investors in depository institutions, the Act provided, within specified limits, that interest earned on all-savers certificates was exempt from federal taxation.

Defendant brokerage firms, all doing business in Iowa, instructed their local agents to begin offering all-savers certificates to their Iowa customers in October 1981. Certificates were purchased through various state and national banks, savings and loan associations, and trust companies outside of Iowa. Each time one of the defendant brokerage companies accepted funds for investment in an all-savers certificate from one of their Iowa customers the broker's agent was paid a commission by the depositor. The funds were then transferred to a financial institution for issuance of a certificate of deposit. No certificate would be issued, however, and no interest would begin to accrue on the investment until the issuing institution received the client's funds and accepted the deposit. The all-savers program ended on December 31, 1982, but the defendant brokers continued with the purchases in the same manner.

The State brought[1] this action for declaratory and injunctive relief against the de-

1. The action was first filed in Iowa District Court for Polk County and was later properly removed to the United States District Court.

fendant brokers and seventeen out-of-state financial institutions. Six national banks, ten federally-chartered savings and loan associations and one Massachusetts trust company remain in the lawsuit, along with several intervenors: the Iowa Banker's Association, the Iowa Independent Banker's Association and the Independent Banker's Association of America.

The petition alleged violations of the Glass-Steagall Act, the Federal Deposit Insurance Act, the McFadden Act, the Federal Bank Holding Company Act, the Federal Homeowners' Loan Act, and Iowa Code section 524.107(1). By a separate order entered in federal court the plaintiffs' claims concerning all-savers certificates, because they were no longer available, were declared moot and dismissed.

Iowa Code section 524.107(1) (1987) provides:

> No person may lawfully engage in this state in the business of receiving money for deposit, transact the business of banking, or may lawfully establish in this state a place of business for such purpose, except a state bank which is subject to the provisions of this chapter, a private bank ... and a national bank authorized by the laws of the United States to engage in the business of receiving money for deposit.

■ I. The first two certified questions ask whether a brokerage engages in "unlawful banking" under the statute when it accepts in Iowa money for deposit in a state or national bank. The first question presupposes the broker is acting as agent for the bank; the second question presupposes the broker is acting as agent for the Iowa depositor.

According to the State the defendant brokers' challenged practice of "assisting" investors in obtaining certificates of deposit amounts to receiving money for deposit, transacting the business of banking, and opening a place of business for such purposes, all of which are prohibited by the foregoing statute.

Defendant brokers see themselves as only intermediaries, assisting their clients in the purchase of a specified type of deposit. They contend no "deposit" is actually made until after the depositor's money leaves their hands, that is, when the issuing institution accepts and deposits the client's funds.

Iowa Code section 524.107(1) is silent on the issue of deposit brokerage and does not purport to regulate the solicitation of certificates of deposit. The "business of banking" is however broadly defined by the Iowa Banking Act as "the business generally done by banks." Iowa Code § 524.-103(6). A "bank," according to the Act, is "any person engaged in the business of banking, authorized by law to receive deposits and subject to supervision by banking authorities of the United States or of any state." Iowa Code § 524.103(5). Although the Act does not define the phrase "receiving money for deposit," we have long recognized that the receipt of money by a bank in the form of "[a] bank deposit creates a valid contract between the bank and the depositor by which the bank is obligated to repay the funds subject to its rules and applicable statutes." *Petersen v. Carstensen,* 249 N.W.2d 622, 624 (Iowa 1977) (citing *In re Estate of Stamets,* 260 Iowa 93, 98, 148 N.W.2d 468, 471 (1967)).

Under this definition we do not think a broker engages in the business of banking merely by facilitating a customer's purchase of a certificate of deposit from a state or national bank. Upon deposit the customer becomes the creditor, not of the broker, but of the bank issuing the certificate.

The Florida supreme court reached the same conclusion in interpreting a similar statute. In *Greater Miami Financial Corp. v. Dickinson,* 214 So.2d 874 (Fla. 1968), the comptroller of Florida sought to enjoin a local "savings account broker" from assisting its customers in depositing funds in out-of-state savings and loan associations. Interpreting a statute similar to our own, a majority of the Florida court held the statute did not "prohibit the solicitation of deposits," stating:

> When a customer delivers money or a check to the broker for forwarding to the non-resident savings and loan association

no debtor-creditor relationship is established.... The broker acts merely as the transient custodian of the funds for the sole and only purpose of sending them on to the intended out-of-state depository.

*Dickinson,* 214 So.2d at 878.

Similarly, in *Department of Banking and Finance v. Standard Federal Savings and Loan Association,* 488 So.2d 50 (Fla. 1986), the court addressed a challenge to a Florida store's agreement with a Michigan savings and loan association to market certificates of deposit and money market certificates in the Florida stores. According to the agreement the Florida stores were to receive a commission or referral fee for assisting their customers in opening accounts and depositing funds in the Michigan savings and loan association. Relying on an amended version of the statute first upheld in *Dickinson* [2] the Florida court rejected the agency's challenge, concluding the stores could not have engaged in the business of banking, or of soliciting and receiving funds for deposit, because they had not entered a debtor-creditor relationship with their customers. The court found "the absence of a debtor-creditor relationship is fatal to the Department's claim that the brokering of savings accounts to out-of-state financial institutions constitutes the business of banking." *Standard Fed. Sav. & Loan Ass'n,* 488 So.2d at 52.

We agree. Defendants here receive their customers' funds, not as bankers, but as brokers. The broker pays no interest on the client's funds, assumes no title to the funds and accepts no risk of loss for them. The obligation to hold the client's money and the right to commingle, loan or otherwise invest it, remain with the bank, not the defendant broker. The parties intend for the broker to act only as an "intermediary" or "transient custodian of funds" traveling between the defendant bank and its depositor, performing the traditional brokerage function of filling a customer's investment order.

Other considerations lend credence to our conclusion. Questions concerning the nature of banking must be resolved according to the purpose of banking law, which we have said is "to protect and safeguard the public in its relation to the bank as depositors." *Grant v. Fritz,* 201 N.W.2d 188, 194 (Iowa 1972). In considering how the customers would stand to be protected under the State's interpretation, it must be remembered that the brokers would remain free to receive their clients' investment funds. The State would only prohibit their investment in certificates of deposit in out-of-state banks. When a comparison is made between the safety of these savings certificates and the risk of loss inherent in the myriad of other possible investments, we have no reason to believe the State's suggested interpretation will do more "to protect and safeguard the public."

Our rejection of the State's contentions is supported by still another principle. The constitutionality of the statute, as the State would apply it, was not made an issue in the suit and is therefore not directly involved in this submission. But constitutionality can nevertheless be considered in construing the statute. *See Iowa Nat'l Mut. Ins. Co. v. Mitchell,* 305 N.W.2d 724, 725 (Iowa 1981) (this court makes every effort to construe statutes in a manner which preserves their constitutionality).

As applied to these defendants the State's interpretation is at best of questionable constitutionality because it would operate to create barriers to interstate trade. *See Hughes v. Oklahoma,* 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250, 255 (1979) ("The Commerce Clause has ... been interpreted by this Court not only as an authorization for congressional action, but also, even in the absence of a conflicting federal statute, as a restriction on permissible state regulation.").

---

**2.** The amended statute prevented persons other than state or national banks with their principal places of business in Florida from engaging "in the business of *soliciting* or receiving funds for deposit or [from] issuing certificates of deposit...." Fla.Stat. § 658.74 (1983) (emphasis added.)

In posing the certified questions concerning the State's interpretation of section 524.107(1), distinctions were made on the basis of whether the broker acted as agent for the customer or as agent for the institution issuing the certificate. In rejecting the State's interpretation we have however made no such distinction. This is because, under the facts here, it makes no difference. The defendant brokers' services do not constitute banking no matter what the agency relationships among the parties.

II. The third and fourth certified questions cover the same ground as the first and second, except that they focus on the defendant banks and the statutes regulating branch banking. We are asked whether a state or national bank engages in "unlawful banking" when it accepts money for deposit from a brokerage doing business in Iowa, on behalf of an Iowa resident. The third question presupposes an agency relationship between the brokerage and the bank. The fourth question presupposes an agency relationship between the bank and the depositor.

It is unlawful to engage in branch banking in Iowa without prior approval of our superintendent of banking. Iowa Code § 524.1201. The State also contends that defendants are subject to the regulations for branch banking prescribed by the superintendent. *See* Iowa Code §§ 5204.1201-(1)–(12). Because defendant banks are not thus qualified as branch banks in Iowa, the State asserts their activity in receiving deposits under the scheme is illegal.

But defendants, notwithstanding their lack of branch bank licenses, cannot be said to have acted illegally unless their practices in fact amounted to branch banking.

Because the term "branch" is nowhere defined in Iowa Code chapter 524, the State asks us to adopt the definition of branching supplied by the McFadden Act. The McFadden Act is inapplicable in this case as indeed is evident from the dismissal of the plaintiffs' federal claims, but also under the clear wording of the Act:

> The term "branch" as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business ... at which deposits are received, or checks paid, or money lent.

12 U.S.C. § 36(f). Many cases have interpreted the term "branching" under federal law. Most recently in *Clarke v. Securities Industries Association,* — U.S. —, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987), the Supreme Court of the United States determined that out-of-state discount brokerage offices, owned and operated by two national banks, were not "branches" of the banks within the meaning of the McFadden Act, because "core banking functions" were not performed in them. Thus, under the *Clarke* decision, even a national bank's operation and control of a securities business (without the assistance of a broker) is not subject to the branching restrictions imposed by 12 U.S.C. section 36(f). *See also State Bank v. Merchants Nat'l Bank & Trust Co.,* 593 F.2d 341 (8th Cir.1979).

Once again we reject the State's suggested interpretation. The same things which led us in the prior division to conclude that the defendant brokers are not engaged in banking also convince us that defendant banks are not engaged in branch banking in Iowa. Again, no debtor-creditor relationship is created in Iowa; none exists until the money is received elsewhere by the institution issuing the certificate. The State is thus unable to say that defendant banks engage in branch banking within the meaning of Iowa Code section 524.107(1).

We therefore answer all four certified questions in the negative.

CERTIFIED QUESTIONS ANSWERED.