SOUTHBRIDGE SAVINGS BANK *v.* KOINONIA
SCHOOL OF SPORTS, INC., ET AL.
(2236)

TESTO, HULL and BORDEN, Js.

Argued April 4—decision released June 5, 1984

*Charles P. Ferland,* for the appellant (named defendant).

*Edwin C. Higgins III,* with whom, on the brief, was *Nicholas A. Longo,* for the appellee (plaintiff).

BORDEN, J. In this foreclosure action the named defendant,[1] Koinonia School of Sports, Inc. (Koinonia), appeals to this court from the judgment of the Superior Court, *Dannehy, J.,* ordering a foreclosure by sale. Koinonia had granted a first mortgage to the plaintiff, a Massachusetts bank, on real property owned by Koinonia and located in Thompson, Connecticut. Koinonia filed a special defense to the plaintiff's complaint to the effect that the plaintiff's mortgage was in violation of General Statutes § 36-5a[2] and thus is unenforceable by virtue of General Statutes

---

[1] The other defendants are subsequent mortgagors and lienors whose interests are not involved in this appeal.

[2] General Statutes § 36-5a (a) provides in pertinent part as follows: "No banking corporation which is organized under the laws of or has its principal office in any other state shall transact in this state the business authorized by its certificate of incorporation or by the laws of the state under which it was organized . . . ."

§ 33-412 (a).[3] By agreement of the parties, the validity of the special defense was referred to *Hon. Alva P. Loiselle,* state referee, first, who rendered a limited judgment for the plaintiff on the issues raised by the special defense. Thereafter the court rendered a judgment ordering a foreclosure by sale.

Koinonia's appeal attacks the conclusion of the court, on the trial concerning the special defense, that the plaintiff in making this mortgage loan was not transacting business in this state within the meaning of General Statutes § 36-5a (a). We find no error.

In a complete and comprehensive memorandum of decision, the court found the following facts. The plaintiff is a bank located in Southbridge, Massachusetts, and is authorized by its charter to do banking business in Massachusetts and within fifty miles of Southbridge in any contiguous state. Its charter is not binding on the laws of Connecticut. It has no certificate of authority to do business in Connecticut. In early May, 1973, four Massachusetts residents, Philip Brown, Geraldine Brown, Ronald Brown and Donald Brown, went with a real estate agent to the bank in Southbridge to arrange a loan to finance the purchase of the property in Thompson, Connecticut, which is involved in this case. At the bank's office in Southbridge they told the bank that a corporation would be formed to be the mortgagor; and they filed a loan application which the bank approved later in May. The bank had no contact with them in Connecticut during their negotiations for approval of the loan. The bank sent appraisers to Con-

[3] General Statutes § 33-412 (a) provides in pertinent part as follows: "No foreign corporation transacting business in this state in violation of section 33-396 shall be permitted to maintain any action, suit or proceeding in any court of this state unless such corporation has obtained a certificate of authority [from the secretary of the state]." General Statutes § 33-396, applicable to foreign corporations generally, with certain exceptions not relevant here, mirrors the specific prohibition for foreign banks contained in General Statutes § 36-5a (a).

necticut to examine the property and sent a notice of loan to Nicholas A. Longo, an attorney in Putnam, Connecticut, authorizing him to search the title, prepare the necessary documents and represent it at the time of the signing of the documents.

On June 1, 1973, the Browns and the sellers of the property met at Longo's office in Putnam where Ronald Brown, as president of Koinonia, signed a note in the amount of $185,000 and a mortgage deed in favor of the bank, and all four Browns individually guaranteed the debt. Ronald Brown, as president of Koinonia, also signed a pay order directed to the bank requesting it to pay $185,000 to the order of Longo and to charge that amount to Koinonia's mortgage loan on the Thompson property. Koinonia also granted a second mortgage to the sellers of the property at that time. Koinonia made out separate checks for escrow funds and attorney's fees. The bank did not transfer any money at that time.

Longo took all the documents, including the seller's deed and a release of an existing mortgage on the property which had been given in escrow to the seller's attorney, to the bank in Southbridge, where the bank's officials checked them. The bank made out a check to Longo for $185,000 pursuant to the pay order. Longo endorsed it back to the bank, which then made out two other separate checks, totalling $185,000, to the sellers and to pay off the existing mortgage. Longo went to the Thompson town clerk's office, checked the land records, recorded the documents, returned to his office and delivered the two checks to the sellers' attorney.

From and including 1973 through 1981 the bank had made 2046 mortgage loans, of which sixty-five were secured by property located in Connecticut. Eighteen of the sixty-five were in 1973. The circumstances surrounding these sixty-five loans were not established.

The bank did not advertise through Connecticut news media or solicit business through Connecticut real estate agents or other agents. It had no office or agent in Connecticut. It did advertise in Southbridge news media which circulated in northern Connecticut. It has many Connecticut residents as depositors, especially from Thompson and Woodstock which are just over the state line.

As the trial court recognized, under General Statutes § 36-5a (a), "the question of whether a foreign corporation is transacting business so as to require a certificate of authority must be determined on the complete factual picture presented in each case, and . . . the corporation's activities must be more substantial than those which would suffice to subject it to service of process." *Sawyer Savings Bank* v. *American Trading Co.,* 176 Conn. 185, 190, 405 A.2d 635 (1978); *Peters Production, Inc.* v. *Dawson,* 182 Conn. 526, 529, 438 A.2d 747 (1980). Some of the relevant considerations are the situs of the contract between the parties, the presence of corporate officers and agents, and the extent of business activities in Connecticut. *Sawyer Savings Bank* v. *American Trading Co.,* supra.

We agree with the trial court that this mortgage loan did not constitute the transaction of business in Connecticut within the meaning of General Statutes § 36-5a (a) and that, therefore, the plaintiff's foreclosure action is not barred by General Statutes § 33-412 (a). The situs of the contract between the bank and Koinonia for the mortgage loan was Massachusetts. The application was made there by Massachusetts residents, and was approved there. Although the documents were signed in Connecticut, they were examined and given final postsigning approval in Massachusetts; and the loan funds were issued there pursuant to the pay order. At that point, "the final act which had to

be done in order to make the agreement between the parties effective, namely, the payment of the monies loaned," was completed in Southbridge and established Massachusetts as the situs of the contract. Id., 191. The subsequent recording of the mortgage deed in Connecticut was not the final act of the party's agreement; it was merely the final act taken by the bank for the protection of the security it had taken from Koinonia for the loan made pursuant to that agreement. The trial court found that, had an intervening encumbrance been recorded when Longo went to the town clerk's office, he would have returned to Southbridge with the checks; but that that indicated only an intent on his part to advise the bank to rescind the already completed agreement, and did not extend the agreement to Thompson. This finding, which is interpretive of the agreement between the parties, is not clearly erroneous and thus will not be disturbed on appeal. See *Kakalik* v. *Bernardo,* 184 Conn. 386, 393, 439 A.2d 1016 (1981).

Furthermore, the situs of the contract is only one of the relevant considerations under General Statutes § 36-5a (a). *Sawyer Savings Bank* v. *American Trading Co.,* supra, 190. It is not necessary to repeat the other factual circumstances which tie this transaction to Massachusetts rather than to Connecticut. Suffice it to say that those elements of the transaction which are tied to Connecticut are insufficient in our view to render it a transaction of business here. The recording of the documents here was, in and of itself, not sufficient. Id., 191. The use of a Connecticut attorney, the signing of the documents, the delivery of the two checks which the bank issued after negotiation in Massachusetts of the check representing the mortgage loan proceeds, and the fact that over a nine year period the bank had made sixty-five mortgage loans on Connecticut property are similarly insufficient. The Supreme Court has held substantially equivalent activity in this

state to fall short of transacting business in Connecticut for purposes of the statutory predecessor of General Statutes § 33-412 (a). Cf. *Alfred M. Best Co.* v. *Goldstein,* 124 Conn. 597, 603, 1 A.2d 140 (1938).

There is no error.

In this opinion the other judges concurred.