[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this foreclosure action the plaintiff has proven CT Page 10375 the due execution of a promissory note in the principal amount of $250,000 by defendant DeForest W. Smith, secured by a second mortgage on property at 4 National Drive, Windsor Locks, default of payment of the note, and a balance due of principal and interest, to August 31, 1992, of $271,720.87. The only defendant to contest the foreclosure is BB Automotive, Inc. (BB), a tenant in the subject property. It raises three defenses: (1) plaintiff is a foreign corporation, not authorized to do business in Connecticut, and pursuant to Conn. Gen. Stats. 33-412, not permitted to maintain this action; (2) BB's lease is not subordinate to the mortgage; and (3) equitable considerations dictate against allowing plaintiff to foreclose upon BB's lease. This court concludes defendant has failed to sustain any of these defenses.
1. The Defense of 33-412
Section 33-412(a) provides: "No foreign corporation transacting business in this state in violation of section 33-396 shall be permitted to maintain any action, suit or proceeding in any court of this state unless such corporation has obtained a certificate of authority."
Section 33-396 provides that "no foreign corporation . . . shall transact business in the state until it has procured a certificate of authority so to do from the secretary of the state, . . . .".
Evidence at trial established that plaintiff, a corporation organized under the laws of the District of Columbia, has not obtained a certificate of authority.
The issue is whether plaintiff has transacted business in Connecticut within the meaning of 33-412.
The facts are as follows: Defendant Smith met plaintiff's president, David Jordan, in 1991 in Atlanta, Georgia where they discussed plaintiff lending $250,000 to Smith secured by a mortgage on the Windsor Locks property. The precise terms and conditions of the mortgage loan were negotiated over the telephone by plaintiff's Atlanta attorney and Smith's attorney, Hanon Russell of Orange, Connecticut. Plaintiff never sent a representative to Connecticut to appraise the property but accepted an CT Page 10376 appraisal obtained by Smith and sent by mail to plaintiff. The mortgage documents were prepared by Attorney Russell and sent to plaintiff's attorney in Atlanta for approval.
The closing took place in Attorney Russell's office in Orange, the papers were executed there, and the loan proceeds were paid to Smith there.
Plaintiff did not solicit the mortgage in Connecticut, does not advertise, have any office, nor do any of its employees conduct any activities in Connecticut. The transaction between plaintiff and Smith was consummated in two to three weeks and there was no evidence plaintiff holds or has ever held any other mortgage on Connecticut property.
Our Supreme Court has stated that "the question of whether a foreign corporation is transacting business so as to require a certificate of authority must be determined on the complete factual picture presented in each case, and that the corporation's activities must be more substantial than those which would suffice to subject it to service of process." Sawyer Savings Bank v. American Trading Co.,176 Conn. 185, 190 (1978). In that case the plaintiff New York bank sought to foreclose on a mortgage on Danbury real estate. Based on the fact that there were no meetings between mortgagee and mortgagor in Connecticut, plaintiff's representatives visited the Danbury property, all mortgage documents were executed and delivered in New York, all funds were transferred in New York, and plaintiff made no other Connecticut mortgage loans, the court determined the plaintiff bank was not transacting business in Connecticut in violation of 33-412 and 36-5a(a).[1]
In Southbridge Savings Bank v. Koinonia School of Sports, Inc., 2 Conn. App. 81 (1984) the plaintiff Massachusetts bank sought to foreclose a mortgage on Thompson, Connecticut land. The facts were that the mortgage terms were negotiated at plaintiff bank in Massachusetts, plaintiff sent appraisers to Connecticut, plaintiff retained a Connecticut lawyer to search the title and handle the closing in Connecticut but all documents were returned to plaintiff bank for approval, loan proceeds were delivered in Connecticut, and the plaintiff bank had sixty-five mortgage loans on Connecticut property. The court found the bank was not transacting business in Connecticut in violation of CT Page 10377 Connecticut 33-412 and 36-5a(a). See also Eljam Mason Supply, Inc. v. Donnelly Brick Co., 152 Conn. 483, 485
(1965).
The cases generally indicate the relevant considerations are "the situs of the contract between the parties, the presence of corporate officers and agents, and the extent of business activities in Connecticut." Sawyer Savings Bank v. American Trading Co., Inc., supra, 190.
Relevant also is Section 33-397(b) which specifies among other activities which do not constitute transacting business in this state by a foreign corporation:
"(6) creating evidence of debt, mortgages or liens on real or personal property; (7) taking security for or collecting debts due it or enforcing any rights in property securing the same . . .; (8) conducting an isolated transaction completed within a period of thirty days and not in the course of a number of repeated transactions of like nature."
The holdings of Sawyer Savings Bank v. American Trading Co., supra; Southbridge Savings Bank v. Kolnonia School of Sports, Inc., supra, dictate the result in this case. The plaintiff had no office or employees in Connecticut, solicited no business here, the negotiations for the mortgage were conducted over the telephone. While the mortgage closing occurred in Connecticut, money was transferred here, and the mortgage security was Connecticut property, this was "an isolated transaction completed within a period of thirty days" (33-397(b)(8), the only mortgage entered into by plaintiff in Connecticut and so "not in the course of a number of repeated transactions of a like nature." (ibid) Thus, based on the "complete factual picture presented" (Sawyer Savings Bank, supra, p. 190) the mortgage does not constitute plaintiff transacting business in this case so as to require the certificate of authority mandated by 33-396. As a consequence, defendant BB failed to establish the special defense, based on 33-412, which it alleged and had the burden to prove.
2. The Defense of nonsubordination
The lease between defendant BB and Court `N Yards U.S.A., Inc., defendant Smith's predecessor CT Page 10378 in title, provides:
ARTICLE XII — TENANT'S OBLIGATIONS TO MORTGAGE LENDERS
 12.01. The rights of the Tenant under this lease will always come after (or be subordinate to) those of someone holding a mortgage on the Project. This provision is automatic, but if Landlord requests it, Tenant will execute any agreement confirming this provision.
At the time of the execution of the lease the owner had a first mortgage on the property. After defendant Smith purchased the mortgage, he placed the second mortgage with the plaintiff, on the property.
Defendant BB claims the lease subordination clause does not apply to the plaintiff's second mortgage because the clause refers to "mortgage" in the singular, rather than plural.
The rule is that, "`The court will not torture words to impart ambiguity when ordinary meaning leaves no room for ambiguity.'" Sturman v. Socha, 191 Conn. 1, 11-12
(1983). Nothing in the negotiation of this lease indicated the lease was to be subordinated to only one mortgage. In fact, BB's representative testified at the trial that he sought to get the subordination clause changed by the then owner without success and that he recognized the clause could apply to more than one mortgage.
The court concludes the subordination clause is applicable and results in the lease being inferior in right to plaintiff's mortgage.
3. Equitable Considerations
Defendant BB asserts this court should exercise the equitable power it has in foreclosure actions to prevent the foreclosure of its lease. In essence, its argument is that the location of the subject property near Bradley Field is very valuable to BB because it generates considerable automotive repair business, and forcing BB to move will cause it substantial harm. On the other hand, the property has a value of $800,000, plaintiff's mortgage is behind a CT Page 10379 first bank mortgage of over $1,100,000, so that plaintiff foreclosure of BB's lease cannot realize it any benefit.
However, the evidence revealed that the real reason BB wants to save its lease from foreclosure is that it contains a provision prohibiting the landlord from leasing any portion of the premises to a business that competes with BB automotive repair business. The clause barred defendant Smith from renting vacant space to likely tenants. He brought several law actions against BB to eliminate or circumvent that noncompetition clause, without success. Since substantial space in the premises is still vacant, the court infers plaintiff would willingly renegotiate a new lease with BB without that noncompetition clause. BB's desire to retain that advantage does not rise to a level that warrants this court exercising equitable powers to exempt the lease from foreclosure or to apply some doctrine of equitable subordination.
While "a trial court in foreclosure proceedings has discretion on equitable considerations and principles to withhold foreclosure," (Hamm v. Taylor, 180 Conn. 491,497 (1980); Connecticut Bank Trust Co. v. Weston, 26 Conn. App. 317,321 (1991), the power usually will be exercised "if the mortgagor is prevented by accident, mistake or fraud from fulfilling a condition of the mortgage", Atlas Real Estate Corporation v. Hauss, 120 Conn. 661, 667 (1936), or if the mortgagee is in some way at fault. See Lettieri v. American Savings Bank, 183 Conn. 1, 12 (1980).
Here the conduct of neither the mortgagor, defendant Smith, nor of plaintiff mortgagee justify withholding foreclosure. Nor do the circumstances of the defendant tenant BB justify it, particularly when it has the power to continue as a tenant by the relatively painless expedient of giving up the noncompetition provision in the lease.
The defendant BB alleged other special defenses in its answer, but they were neither argued nor briefed and are deemed abandoned.
The court concludes that plaintiff is entitled to a judgment of foreclosure, but withholds setting the terms of the judgment until parties have the further opportunity to be heard. CT Page 10380
Robert Satter State Trial Referee