**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Dollar Dry Dock Bank,**

v.

**MARK DAVID–WASHINGTON BOULEVARD ASSOCIATES, et al.**

Civ. A. No. 5:92–CV–298 (EBB).

United States District Court, D. Connecticut.

April 7, 1994.

David F. Weber, Berchem, Moses & Devlin, P.C., Milford, CT for plaintiff, F.D.I.C.

Carolyn W. Alexander, Epstein & Fogarty, Stamford, CT, for defendants, Mark David–Washington Boulevard Associates, William Weinstein and Richard Schlesinger.

ELLEN B. BURNS, Senior District Judge.

*RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. # 23)*

EGAN, United States Magistrate Judge.

Plaintiff, the Federal Deposit Insurance Corporation as receiver for Dollar Dry Dock Bank ("FDIC"), has moved this court for summary judgment against the defendants Mark David–Washington Boulevard Associates ("Mark David Associates"), Richard Schlesinger and William Weinstein, general partners of Mark David Associates. On May 24, 1993, the court heard oral argument on the motion for summary judgment. Defendants represented that they had no objection to the court entering summary judgment in favor of the FDIC as to the First, Second and Fourth Special Defenses, as well as, the defendants' three counterclaims. The court then granted summary judgment in plain-

tiff's favor on all but the defendants' Third Special Defense.

## I. FACTUAL BACKGROUND

For the purposes of the summary judgment motion, the court finds the following facts:

The present action arises out of a mortgage loan transaction involving Gateway Bank, a Connecticut savings bank ("Gateway"), Dollar Dry Dock Bank ("Dollar Dry Dock") and defendants Mark David Associates, William Weinstein and Richard Schlesinger. On July 16, 1987, Mark David Associates, by its general partners Weinstein and Schlesinger, executed a note in the principal amount of $11,000,000.00 in favor of Gateway. This note was secured by a mortgage deed, security agreement and financing statement also dated July 16, 1987 and recorded on the Stamford Land Records. The mortgage encumbers a certain piece of undeveloped real property located on Washington Boulevard in Stamford, Connecticut. As additional security for the note, Weinstein and Schlesinger each executed a guaranty agreement dated July 16, 1987. On the same date, Gateway endorsed the note and assigned its interest in the mortgage to Dollar Dry Dock, a savings bank organized and existing under the laws of the state of New York.

After certain written extensions of the maturity date of the note, the note finally matured on July 15, 1989. Dollar Dry Dock made demand upon Mark David Associates, Weinstein and Schlesinger but they failed to make payment of the outstanding amount of principal. Subsequently, Dollar Dry Dock initiated this action in state court by complaint dated November 21, 1989 to foreclose on the mortgage and to recover amounts allegedly due from Weinstein and Schlesinger under the guaranties.

On February 21, 1992, Dollar Dry Dock was declared insolvent and the FDIC was appointed as receiver. The FDIC removed this action to this court. Thereafter, the FDIC substituted itself as party plaintiff and on February 9, 1993, the FDIC filed its motion for summary judgment.

On May 24, 1993, this court granted summary judgment against the defendants on their First, Second and Fourth Special Defenses, as well as, on their three counterclaims. The court reserved decision on defendants' Third Special Defense which is the sole issue which the court will now address.

## II. DISCUSSION

■ In their Third Special Defense, the defendants claim that Dollar Dry Dock transacted business in Connecticut without a certificate of authority to do so, and therefore, that the FDIC is barred from maintaining the present action pursuant to Connecticut General Statutes § 33-412. Section 36-5a(a) of the General Statutes provides that:

[N]o foreign banking corporation shall transact in this state the business authorized by its certificate of incorporation or by the laws of the state under which it was organized, unless empowered so to do by some general or special act of this state, ... provided, without excluding other activities which may not constitute transacting business in this state....

A foreign banking corporation which transacts business in violation of § 36-5a is subject to the penalties of § 33-412.[1]

However, § 36-5a also outlines certain exemptions for specific activities of a foreign bank which the legislature does not construe as "doing or transacting business in this state." A foreign bank engaged in exempted activity would not be required to obtain a certificate of authority. For example, § 36-5a(a) states that:

[N]o foreign banking corporation shall be deemed to be doing or transacting busi-

---

1. Section 33-412(a) states:

No foreign corporation transacting business in this state in violation of section 33-396 shall be permitted to maintain any action, suit or proceeding in any court of this state unless such corporation has obtained a certificate of authority. Nor shall any action, suit or proceeding be maintained in any court in this

state by any successor or assignee of such corporation on any right, claim or demand, arising out of the transaction of business by such corporation in this state, until a certificate of authority has been obtained by such corporation or by a corporation which has acquired all or substantially all of its assets.

ness in this state ... by reason of its contracting with a bank located in this state for the acquisition by such foreign banking corporation of a part interest in or the entire interest in a loan which such domestic bank proposes to make....

Also, § 36–5a(g) states that "no foreign banking corporation, which makes mortgage loans in this state secured by mortgages on real estate located in this state shall be deemed to be doing or transacting business in this state solely when making such loans."

Ordinarily, the court would analyze a foreign bank's contacts with the state of Connecticut to determine whether it was impermissibly transacting business within the state. *See Sawyer Savings Bank v. American Trading Co., Inc.*, 176 Conn. 185, 405 A.2d 635 (1978); *Southbridge Savings Bank v. Koinonia School of Sports, Inc.*, 2 Conn. App. 81, 476 A.2d 1066 (1984). However, in the present case, the FDIC claims that Dollar Dry Dock was not "transacting business" in violation of § 36–5a because its loan activity involving the defendants falls within the exemption carved out by § 36–5a(g). For the following reasons, the court agrees with the FDIC and finds that the defendants' Third Special Defense must fail as a matter of law.[2]

In the present case, the parties do not dispute that Dollar Dry Dock is a foreign banking corporation within the meaning of § 36–5a. In addition, the FDIC does not deny that Dollar Dry Dock made loans in Connecticut secured by mortgages on real property in Connecticut or that the real property in question was commercial rather than residential.

Defendants argue that the exemption of § 36–5a(g) does not apply to Dollar Dry Dock's transaction with the defendants for two reasons: (1) prior to May 29, 1987, the exemption for mortgage backed loans applied only to foreign banks making loans secured by mortgages on residential real estate in Connecticut and the mortgage loan in question was "made" prior to the effective date of the amendment which was May 29, 1987; and (2) Dollar Dry Dock's banking activities

far exceeded the "sole" making of a mortgage backed loan under § 36–5a(g).

It is true that the legislature amended § 36–5a(g) in 1987 by deleting reference to *residential* mortgage loans and, thus, created an exemption for *any* mortgage loan which is secured by a mortgage on real estate located in the state of Connecticut. The defendants argue that the amendment, effective on May 29, 1987, does not apply to the instant mortgage loan because the loan was "made" on May 20, 1987, prior to the effective date of the statute. In support of this argument, defendants state that on April 10, 1987, Dollar Dry Dock agreed to provide financing to defendants and that no later than May 20, 1987, Richard Schlesinger accepted Dollar Dry Dock's offer on behalf of the defendants. The defendants argue, therefore, that the loan was created at the time of defendants' acceptance of Dollar Dry Dock's offer on May 20, 1987, which creation occurred prior to the effective date of the amendment to § 36–5a(g) of May 29, 1987.

■ The court disagrees with the defendants. Defendants admit that the parties closed the loan on July 16, 1987 at which time they executed all formal loan documents including the loan agreement, mortgage, note and individual guaranties, and at which time the bank made payment of the monies loaned. The court finds that the note was made on July 16, 1987, the date it was executed, delivered and the monies were loaned. Until the note was executed and delivered, the note was not binding upon the parties. *See Atwood v. Atwood*, 86 Conn. 579, 581, 86 A. 29 (1913); *see also* 11 Am.Jur.2d *Bills and Notes* § 270 (instrument considered made for all legal purposes on the day it is delivered); *Appliances, Inc. v. Yost*, 181 Conn. 207, 211, 435 A.2d 1 (1980) (note created and enforceable when executed and accepted). Thus, even though the parties agreed to the terms of the financing, at the latest, on May 20, 1987, the loan was not legally binding until the execution, delivery and payment of the

---

**2.** The court need not reach the remainder of the FDIC's and the defendants' arguments as the

exception outlined in § 36–5a(g) is dispositive of the case.

monies loaned on July 16, 1987.[3] Therefore, the subject loan was made on July 16, 1987, two months subsequent to May 29, 1987, the effective date of the amendment of § 36–5a(g). The court finds that the exemption under the amended version of § 36–5a(g) was available to Dollar Dry Dock, and thus, to plaintiff FDIC.

Defendants also argue that the exemption in § 36–5a(g) does not apply because Dollar Dry Dock's Connecticut activities far exceeded the "sole" making of a mortgage backed loan. Defendants interpret § 36–5a(g) as requiring the plaintiff to show that Dollar Dry Dock's sole Connecticut activity was the making of the loan: "[N]o foreign banking corporation, which makes mortgage loans in this state secured by mortgages on real estate located in this state shall be deemed to be doing or transacting business in this state *solely when making such loans*." The defendants interpret this language as limiting a foreign bank to a single mortgage backed loan transaction in the state. Therefore, analyzing Dollar Dry Dock's Connecticut banking activities as a whole,[4] defendants conclude that because Dollar Dry Dock had extensive Connecticut dealings, its activities exceeded the scope of the exemption outlined in § 36–5a(g). The court disagrees with defendants' interpretation of the statute.

When interpreting a statute, the court's objective is to give effect to the intent of the legislature. *State v. Delafose*, 185 Conn. 517, 521, 441 A.2d 158 (1981). To determine the legislative intent, the court looks first to the words of the statute itself. *Lauer v. Zoning Comm'n of Redding*, 220 Conn. 455, 460–461, 600 A.2d 310 (1991).

Section 36–5a(g) makes reference to a foreign bank "which makes mortgage *loans*." By use of the word "loans" in the plural, the legislature must have contemplated that a foreign bank may make more than one mortgage loan in the state of Connecticut. In addition, defendants are correct that the language "solely when making such [mortgage] loans" is a limitation on the Connecticut activities of a foreign bank. However, this limitation does not restrict a foreign bank to the making of only one mortgage loan, but rather, the limitation operates to exempt only a foreign bank's mortgage-backed loan activity in Connecticut and not *other* types of banking activity in which such a foreign bank may engage. Therefore, the scope of Dollar Dry Dock's Connecticut banking activity as a whole is not relevant. The only relevant banking activity in the present case is Dollar Dry Dock's loan to defendants. It is undisputed that Dollar Dry Dock is a foreign bank and that the loan in question is a mortgage loan secured by real property in Stamford, Connecticut. Accordingly, pursuant to § 36–5a(g), Dollar Dry Dock was not "doing or transacting business" in the state of Connecticut, and was not required to have obtained a certificate of authority in order to make such mortgage loan. Thus, the FDIC is not barred by § 33–412 from maintaining the present suit against the defendants. No genuine issues of material fact exist and, therefore, summary judgment is appropriate.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. # 23) as to defendants' Third Special Defense is hereby GRANTED.

Any objections to this report and recommendation must be filed with the Clerk of Courts within ten (10) days of the receipt of this recommended ruling. Failure to object to this report and recommendation within ten (10) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure;

---

3. Further support for the conclusion that a loan is not made until funded can be found in the Connecticut courts' decisions in which they have interpreted § 36–5a. Those courts have found that the situs for a loan transaction for the purposes of § 36–5a was the place where "the final act which had to be done in order to make the agreement between the parties effective, namely, the payment of the monies loaned." *Sawyer Savings Bank v. American Trading Co.*, 176 Conn. 185, 191, 405 A.2d 635 (1978); *Southbridge Savings Bank v. Koinonia Sch. of Arts, Inc.*, 2 Conn. App. 81, 85–86, 476 A.2d 1066 (1984).

4. Defendants represent that Dollar Dry Dock acquired over 500 mortgage loans, either directly or indirectly, during the period of 1986 to 1990, in five Fairfield County towns alone. *See* Affidavit of Ronald King ¶¶ 8–9.

Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989).

Dated at Hartford, Connecticut this 6th day of January, 1994.