**FARMERS BANK OF NORTHERN MISSOURI, UNIONVILLE, MISSOURI, Appellee,**

v.

**Donald ERPELDING and Janet Erpelding, Appellants.**

No. 95–1102.

Supreme Court of Iowa.

Oct. 23, 1996.

Rehearing Denied Nov. 22, 1996.

Warren L. Bush of the Bush Law Office, Wall Lake, for appellants.

Andre H. Merrett of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Appellants, Donald and Janet Erpelding, appeal from a summary judgment order of the district court finding them in default on certain promissory notes. We affirm.

## I. Facts and Procedural Background

On January 25, 1994, appellants Donald and Janet Erpelding purchased a farm in southern Iowa with money obtained by giving a $134,500 promissory note secured by a chattel mortgage and a $15,000 operating note to appellee, Farmers Bank of Northern Missouri. Farmers Bank is a state bank chartered under the laws of Missouri and is not licensed to engage in the business of banking in Iowa. The notes were correctly filed and perfected in Iowa. Farmers Bank sought a judgment on the notes based upon the Erpeldings' alleged default due to the submission of false financial information and for their failure to disclose the existence of a competing security interest on cattle that were pledged as collateral on the notes. Both constitute valid instances of default under the terms of the note.

On October 28, 1994, Farmers Bank sought immediate payment of all owed princi-

pal and interest. After the Erpeldings failed to respond to this demand, the bank brought two causes of action for replevin seeking possession of the items pledged by the Erpeldings as collateral for the notes. These actions were consolidated into one action by the court. Following a hearing on November 18, 1994, the district court awarded Farmers Bank temporary possession of the pledged collateral and attorney fees in the amount of $12,500, as provided by the terms of the notes. Farmers Bank then sought a summary judgment order on the basis that there were no genuine issues of material fact in regard to the alleged default. On April 12, 1995, the district court granted the motion for summary judgment and awarded Farmers Bank permanent possession of the collateral and awarded $12,500 in attorney fees. The Erpeldings filed a motion to enlarge the district court's ruling under Iowa Rule of Civil Procedure 179(b) which was denied by the court. It is from the summary judgment that the Erpeldings appeal.

## II. Standard of Review

We will uphold a summary judgment when the moving party shows no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *C–Thru Container Corp. v. Midland Mfg. Co.*, 533 N.W.2d 542, 544 (Iowa 1995). In making this determination, we review the record in the light most favorable to the nonmoving party. *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 811 (Iowa 1994).

## III. Issues on Appeal

### A. Iowa Banking Act

■ The Erpeldings seek to invalidate the terms of the promissory notes on the ground that Farmers Bank illegally engaged in the business of banking, as prohibited by the Iowa Banking Act. The Iowa Banking Act provides, in relevant part, that:

No person may lawfully engage in this state in the business of receiving money for deposit, transact the business of banking, or may lawfully establish in this state a place of business for such purpose, except a state bank which is subject to the provisions of this chapter, a private bank to the extent provided for and limited by sections 524.1701 and 524.1702, and a national bank authorized by the laws of the United States to engage in the business of receiving money for deposit.

Iowa Code § 524.107 (1995).

A bank, according to the Act, is "any person engaged in the business of banking, authorized by law to receive deposits and subject to supervision by banking authorities of the United States or of any state." *Id.* § 524.103(5). There is no dispute that Farmers Bank is a bank and was conducting business as a bank when it entered into the security agreement with the Erpeldings. It denies, however, that its activity falls within the scope of the Iowa Banking Act. Farmers Bank neither has branch offices in this state nor does it regularly transact business here. The question, then, is whether its relationship with the Erpeldings constitutes an illegal transaction in the business of banking within the jurisdiction of the Act.

■ Although Farmers Bank is carrying on the business of banking in Missouri, this is not determinative of the question of whether it is illegally transacting the business of banking in Iowa. The Act broadly defines the "business of banking" as being "the business generally done by banks." *Id. §* 524.103(9). However, there are limitations to the broad application of this statement.

There is a distinction between doing a banking business and the performance of isolated acts of which the business consists. Carrying on a banking business does not mean the performance of a single disconnected banking business act. It means conducting, prosecuting, and continuing business by performing progressively acts normally incident to the banking business. Thus, a corporation which is denied the right to exercise banking powers may, nevertheless, in the regular transaction of its affairs, do some of the things which constitute the business of banking, such as buying and selling commercial paper. Buying and discounting bills, notes, etc., are not necessarily banking, nor is the lending of one's own money on mortgage security.

10 Am.Jur.2d *Banks* § 3, at 27 (1963).

There is no indication in the record that Farmers Bank regularly conducts banking

business in this state, nor does it appear that its relationship with the Erpeldings extends beyond the security arrangement. Although Farmers Bank clearly was acting as a bank in its dealings with the Erpeldings, we do not agree with the Erpeldings' contention that it was impermissibly carrying on the "business of banking" as it relates to the Iowa Banking Act. The mere fact that the transaction was connected to persons, property, or collateral in Iowa does not necessarily make Farmers Bank's conduct illegal. Absent a showing that Farmers Bank regularly crossed the border and progressively involved itself in the business of banking in Iowa, its relationship with the Erpeldings does not violate the Iowa Banking Act.

Our interpretation is supported by the Connecticut courts who have reviewed similar issues. In finding that a state bank chartered in New York could foreclose on a mortgage for property in Connecticut, the Connecticut Supreme Court held that merely because the mortgage deeds were recorded in Connecticut, it did not necessarily constitute transacting business in that state as prohibited by statute. *Sawyer Sav. Bank v. American Trading Co.*, 176 Conn. 185, 405 A.2d 635 (1978). In *Sawyer*, the court emphasized the situs and "final act" of the mortgage contract, but also cited other factors it considered significant in determining whether the New York bank was illegally transacting business in Connecticut. *Id.* at 638. As the court noted, "[t]he plaintiff had made no other mortgage loans in Connecticut. It maintained no office or place of business in the state nor did it have officers or an agent present here for solicitation of business." *Id.*

Similarly, the Appellate Court of Connecticut found that a mortgage loan issued by a Massachusetts bank for property located in Connecticut did not constitute transacting business in Connecticut. *Southbridge Sav. Bank v. Koinonia Sch. of Sports, Inc.*, 2 Conn.App. 81, 476 A.2d 1066, 1069 (1984). In *Southbridge*, the bank in question had much more significant ties to Connecticut than in

the case at bar. Nevertheless, the court found the activity to be insufficient to render it a transaction of business even though the bank had made sixty-five mortgage loans on Connecticut property over a nine-year period. *Id.* Farmers Bank's business in Iowa is much less significant than that considered in these cases and is similarly insufficient to warrant a finding that it was impermissibly engaging in the business of banking in this state.

We have previously stated that "[q]uestions concerning the nature of banking must be resolved according to the purpose of banking law, which we have said is 'to protect and safeguard the public in its relation to the bank as depositors.'" *State ex rel. Huston v. Shearson/American Express, Inc.*, 408 N.W.2d 363, 367 (Iowa 1987) (quoting *Grant v. Fritz*, 201 N.W.2d 188, 194 (Iowa 1972)). The Erpeldings do not contend that they were in any way disadvantaged by their relationship with Farmers Bank. They entered into the security agreement willfully and voluntarily. It appears they are attempting to use the Iowa Banking Act as a sword for personal gain rather than a shield for the public good by attempting to escape their contractual obligation to repay the loans under the terms of the notes.

B. Access to Iowa Courts

■ The Erpeldings further contend that because Farmers Bank is a foreign corporation which is not authorized to conduct business in Iowa via a certificate of authority, then it should not be allowed access to Iowa courts for relief. *See* Iowa Code §§ 490.1501(1), .1502(1).[1] Section 490.1501(2)(g) of the Code, however, specifically states that "[c]reating or acquiring indebtedness, mortgages, and security interests in real or personal property" does not constitute transacting business for the purposes of section 490.1501(1). Thus, the replevin action was properly brought before the Iowa district court.

---

1. Section 490.1501(1) provides:
   A foreign corporation shall not transact business in this state until it obtains a certificate of authority from the secretary of state.
   Section 490.1502(1) provides:

   A foreign corporation transacting business in this state without a certificate of authority shall not maintain a proceeding in any court in this state until it obtains a certificate of authority.

C. Attorney Fees

■ Farmers Bank's action to recover attorney fees was tried at law. Our scope of review is for correction of errors at law. Iowa R.App. P. 4; *City of Albia v. Stephens,* 461 N.W.2d 326, 328 (Iowa 1990).

■■ The promissory notes signed by the Erpeldings expressly provide for the recovery of attorney fees in any subsequent replevin actions. The Erpeldings correctly assert that attorney fees are not taxable as costs unless specifically authorized by statute. *See City of Ottumwa v. Taylor,* 251 Iowa 618, 621, 102 N.W.2d 376, 378 (1960). They are incorrect, however, in their contention that Farmers Bank cannot recover such fees because Iowa Code section 643.17 (which specifies the parameters of a replevin judgment) does not expressly authorize it. A promissory note is generally described as being a contract. *See Federal Land Bank v. Woods,* 480 N.W.2d 61, 66 (Iowa 1992). Iowa Code section 625.22 provides "[w]hen judgment is recovered upon a written contract containing an agreement to pay an attorney's fee, the court shall allow and tax as part of the costs a reasonable attorney's fee to be determined by the court."

This court has previously held that a bank can recover attorney fees for actions on a note, including appellate attorney fees where the language of the note does not expressly prohibit it. *Federal Land Bank,* 480 N.W.2d at 69–70. Thus an award of attorney fees was proper in this action, based upon the express provisions in the signed promissory notes and the statutory authorization of the same. The Erpeldings' contention that an itemization of the charged fee must be submitted in order for the court to assess its reasonableness is without basis in the law. The only statutory prerequisite for an award of attorney fees in this case is the filing of a proper affidavit, which was done. *See* Iowa Code § 625.24.

**AFFIRMED.**